# Patrick J. Joyce Esq.
Attorney at Law
70 Lafayette Street - 2nd Floor
New York, New York 10013
(212) 285-2299
FAX (212) 513-1989

New Jersey Office:

4W. S. Orange Ave.
South Orange, NJ 07079

March 15, 2013

Honorable Kimba Wood
United States District Judge
United States District Court
Southern District of New York
New York, New York 10007

Re: United States v. Stephen Santana, 10 CR 1057-01 (KMW)

Dear Judge Wood,

    I am the attorney for Stephen Santana, the defendant in the above referenced matter. Mr. Santana entered a plea of guilty on October 11, 2012 to Count One (1) of the instant indictment. Mr. Santana is scheduled to be sentenced before your Honor on April 3, 2013. This letter is being filed pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

## THE PRE-SENTENCE REPORT

    The defendant does not object to the factual recitation set forth in the Pre-Sentence Report. The Report is not flawed in its analysis regarding a guideline calculation. While the report will be referred to at length later, two points are worth highlighting at this time. First, the Probation Report accurately states that the court is free to sentence Mr. Santana to a term of imprisonment, which can be served **concurrently** with the sentence he is presently serving. (Page 22, Paragraph 99) Secondly, the report defends a recommendation that the court sentence Mr. Santana to a concurrent term of imprisonment (PSI PP 26-27). The defendant requests that This Court sentence him consistent with the recommendation of the Probation Office.

## THIS COURT HAS THE DUTY TO IMPOSE A REASONABLE, STATUTORY SENTENCE.

    The Defendant submits that pursuant to United States v. Booker, 125 S. Ct. 738 (2005), the guidelines range calculated by

the probation office or decided upon by the court, is no longer binding on the court. The guideline range should be treated as a recommendation as to where the Defendant should be sentenced. Therefore, this Court is not required to sentence the Defendant to the guideline range presented in the PSI. Instead, this Court should consider the information in the PSI along with other relevant information, including all factors listed under 18 U.S.C. § 3553(a). When considering all of these factors, it is apparent that a sentence, which is ordered to run concurrent with the sentence Mr. Santana is presently serving, sufficiently satisfies the court's duties under the statute.

In United States v. Crosby, the Second Circuit court summarized the affect of Booker on federal sentencing.

"First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence." Crosby, 397 F.3d at 113.

Now that the Guidelines are merely advisory, the sentencing court is required to consider a host of individual variables and characteristics excluded from those calculations called for by the Guidelines. As noted by the Crosby Court, "[p]rior to Booker /Fanfan, the section 3553(a) requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a departure was met. Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to "consider" numerous factors acquires renewed significance." Crosby 397 F.3d at 111.

## THE "PARSIMONY PROVISION"

Section 3553(a) is referred to in Booker and much post-Booker case law as containing various "factors" – one of which is the guidelines – that must now be considered in determining a sentence. This is a misleading oversimplification. Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate. The sentencing mandate contains a limiting principle favorable to defendants and is the overriding principle that limits the sentence a court may impose.

The overriding principle and basic mandate of Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2).

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The Parsimony Provision is not just another "factor" to be considered along with the others set forth in Section 3553(a) (discussed below) – it sets an independent limit on the sentence a court may impose. See United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989) Since § 3553(a) requires a sentence to be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes is reversible, even if within guideline range. Id.

## SECTION 3553 FACTORS

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed, (3) "the kinds of sentence available;" (4) the kinds of sentences and ranges established in the guidelines, (5) any pertinent policy statements, (6) the need to avoid unwarranted sentencing disparity; and (7) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1-7).

Neither the statute itself nor Booker suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not

greater than necessary to comply with the four purposes of sentencing.

In sum, this Court is statutorily required to impose a sentence that is minimally sufficient to accomplish the purposes of sentencing, and the guidelines are only one of seven equally important factors to be considered in determining the minimally sufficient sentence. In the instant case the four goals of (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation are satisfied if the court sentences Mr. Santana consistent with the recommendation by the Probation Department.

The United States Supreme Court has issued two opinions which support the defendant's position. In Kimbrough v. U.S., 128 S.Ct.558 (2007), the court affirmed a District Court's decision to deviate from the Guideline's 100-1 "cocaine base" ratio in sentencing a defendant. In Gall v. United States 128 S.Ct. 586 (2007) the Court ruled that a District Court's non-guideline sentence did not involve an abuse of discretion and therefore could not be invalidated by Appellate Review. The common thread running through these cases is that a District Court is bound only by the factors contained in 18 USC § 3553. In admonishing the appellate court in Gall, the Court stated, "But it is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable. On abuse of discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." United States v. Gall, supra at *12.

In Kimbrough, the defendant pleaded guilty to several offenses two of which subjected him to a statutory mandatory minimum sentence of One Hundred and Eighty (180) months. The Guidelines range applicable to the case suggested a sentence of from Two Hundred Twenty Eight to Two Hundred Seventy months. (228-270 months). The District Court found that a sentence within the range proscribed by the Guidelines would be "greater than necessary" to accomplish the mandate of § 3553(a). The court specifically cited the unjust effect of crack cocaine guideline calculations had upon sentencing and also considered other factors contained in § 3553(a) in sentencing outside the guideline range.

Both the Government and the Court of Appeals objected to the sentencing court's rationale. The Supreme Court noted that while the sentencing court must consider the Guideline range as one factor in its sentence, the sentence was not invalid simply because the District Court considered the "crack" to "powder"

disparity in fashioning an appropriate sentence.

In Gall the District Court sentenced the defendant to a period of probation. The Guidelines had suggested a sentence of from 30-37 months. The Eighth Circuit determined that the sentence was an "extraordinary" variance from the Guidelines, found that the sentence was not justified and remanded for re-sentence. The United States Supreme Court disagreed. Finding that the Circuit Court's analysis was constitutionally flawed, the Court re-emphasized the position that the role of the Guidelines is merely advisory.

### Nature and Characteristics of Mr. Santana and This Case

The PSI report has detailed the numerous factors, which indicate why a concurrent sentence is appropriate. Portions of the probation report are extremely instructive when the court considers Mr. Santana's character. Mr. Santana was raised primarily by his mother, Maryanne Rivera. Neither his father nor his step-father were present, physically or emotionally, while Steven was growing up. Both men have been incarcerated for most of Steven's life and he and his siblings have been at times victims of significant violence. (PSI 15-16)

Despite his upbringing, Mr. Santana has maintained strong ties to his mother, and has created a real relationship with his daughter and stepson. Ms. Woods, the mother of his daughter told Probation that she often visited Mr. Santana in prison with their daughter, because, "she wanted her daughter to have a relationship with her father". (PSI 17) Mr. Santana's fiancée, Ms. Johnson, remains loyal to him. She is appreciative of his efforts to help raise her son, and she views herself and Mr. Santana as members of a team. She told probation that Mr. Santana is a "great guy who would give you the shirt off his back". (PSI 18)

This information is offered as background to the events that led to this conviction. Mr. Santana was hiding in an attic when Law Enforcement Agents came to arrest him. In his attempts to avoid being arrested he broke away from several officers. During the pursuit and eventual capture of Mr. Santana, Law Enforcement agents came into physical contact with him. Mr. Santana was wrong to engage in this dangerous behavior and he has admitted to its illegality at the time of the plea. It should be noted that Mr. Santana only pled guilty to that portion of the statute that prohibits physical conduct. He did not admit to, nor does he believe the officers suffered physical injury. During the scuffle Mr. Santana did suffer injuries, which caused him to be taken to

the hospital. (PSI 5)

Mr. Santana was arrested for being part of a narcotics conspiracy in Philadelphia, Pennsylvania. At trial the jury acquitted Mr. Santana of conspiracy, but convicted him of participating in several relatively low level drug sales and with possessing and selling Firearms. Mr. Santana was sentenced to serve a term of imprisonment of 240 months on April 5, 2012. The PSI report recommended that Mr. Santana be given a two (2) point enhancement to his base Guideline Level, due to the reckless behavior during flight, which is the basis of this indictment. Judge Davis considered this suggestion, found that the two (2) point enhancement was appropriate, and no doubt factored into his sentencing decision, the behavior for which Mr. Santana is to be sentenced today.

Since his incarceration Mr. Santana has participated in several programs and training classes. As he stated to the Probation officer in Pennsylvania, Mr. Santana intends to change his ways while being incarcerated. He loves his family and wants to get back to them as quickly as possible. His participation in these several programs proves that he is a young man who is taking positive steps to help achieve that commitment.

## Conclusion

The defendant respectfully submits that a sentence which is "sufficient but not greater than necessary" to accomplish the goals set forth in the sentencing statute would result in a concurrent sentence. Mr. Santana's sentence in Pennsylvania took into consideration the facts, which form the basis of this prosecution. He has family members who are prepared to stand by him until he is released. He has begun to take positive steps toward his own rehabilitation.

The Defendant respectfully reserves the right to raise additional issues at the time of sentencing.

Respectfully Submitted,

*Patrick Joyce*
Patrick Joyce
Attorney for Defendant Stephen Santana